[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-14894
Non-Argument Calendar
_____

D.C. Docket No. 8:15-cr-00056-SCB-EAJ-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

GENERO PEREZ-ALONSO,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(March 10, 2017)

Before TJOFLAT, WILLIAM PRYOR and BLACK, Circuit Judges.

PER CURIAM:

Genero Perez-Alonso appeals his 120-month sentence, imposed after pleading guilty to one count of conspiracy to distribute and to possess with the intent to distribute methamphetamine and cocaine, in violation of 21 U.S.C. §§ 846 and 841(a)(1), (b)(1)(A); one count of distributing cocaine, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C); one count of distributing methamphetamine, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B); and one count of distributing methamphetamine, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A).  On appeal, Perez-Alonso first argues the district court erred by applying the two-level firearm enhancement, pursuant to U.S.S.G. § 2D1.1(b)(1).  Second, he argues that the court erred by determining that application of the firearm enhancement necessarily precluded safety-valve relief under 18 U.S.C. § 3553(f).  After review,[1] we vacate the district court's sentence and remand.

## I. DISCUSSION

*A. Firearm Enhancement*

Perez-Alonso contends the court erred when it concluded the government satisfied its burden of showing that his firearm possession was in furtherance of the drug offense.  Under § 2D1.1(b)(1), a defendant's offense level is increased by two

---

[1] We review the district court's findings of fact under U.S.S.G. § 2D1.1(b)(1) for clear error, and we review *de novo* the application of the Guidelines to those facts.  *United States v. Pham*, 463 F.3d 1239, 1245 (11th Cir. 2006) (quoting *United States v. Gallo*, 195 F.3d 1278, 1280 (11th Cir. 1999)).  When reviewing a district court's safety-valve decision, we review the district court's factual determinations for clear error and its legal interpretation of the relevant statutes and sentences guidelines *de novo*.  *United States v. Poyato*, 454 F.3d 1295, 1297 (11th Cir. 2006) (quoting *United States v. Johnson*, 375 F.3d 1300, 1301 (11th Cir.2004)).

levels if a dangerous weapon was possessed.  U.S.S.G. § 2D1.1(b)(1).    To justify a firearms enhancement, the government must establish by a preponderance of the evidence either (1) that the firearm was present at the site of the charged conduct, or (2) that the defendant possessed a firearm during conduct associated with or relevant to the offense of conviction.  *United States v. Stallings*, 463 F.3d 1218, 1220 (11th Cir. 2006); *see also* U.S.S.G. § 2D1.1(b)(1), cmt. n.11(A).  If the government meets its burden, then the burden shifts to the defendant to show that a connection between the weapon and the offense was "clearly improbable."  *Id.*

Perez-Alonso argues that the sole basis for applying the firearm enhancement was the uncorroborated hearsay statements of Noel Norato-Perez, his co-conspirator, and that relying on such speculative, unreliable hearsay was error. In determining whether factors exist that would enhance a defendant's sentence, a sentencing court may consider any information, including hearsay, regardless of its admissibility at trial, provided that (1) the evidence has sufficient indicia of reliability, (2) the court makes explicit findings of fact as to credibility, and (3) the defendant has an opportunity to rebut the evidence.[2]  *United States v. Ghertler*, 605 F.3d 1256, 1269 (11th Cir. 2010) (quoting *United States v. Baker*, 432 F.3d 1189,

---

[2] To prevail on a challenge to a sentence based on the consideration of hearsay, a defendant must show (1) that the challenged evidence is materially false or unreliable and (2) that it actually served as the basis for the sentence. *Ghertler*, 605 F.3d at 1269.  Here, the record clearly establishes that the hearsay evidence served as the basis for the firearm enhancement.

1253 (11th Cir. 2005)); *see also United States v. Anderton*, 136 F.3d 747, 751 (11th Cir. 1998); U.S.S.G. § 6A1.3(a).

### 1. Indicia of reliability

In this case, Norato-Perez's statements do not have sufficient indicia of reliability. *Id.* First, the statements themselves bore no indicia of reliability; for example, Norato-Perez was not speaking against his own interest, nor were his statements independently corroborated by other testimony or even other hearsay statements. *See United States v. Lee*, 68 F.3d 1267, 1275–76 (11th Cir. 1995) (vacating and remanding district court sentence where district court made no factual finding as to credibility of hearsay evidence and that the mere fact that the hearsay statement was against interest did not constitute "sufficient indicia of reliability); *United States v. Gordon*, 231 F.3d 750, 760 (11th Cir. 2000) (finding sufficient indicia of reliability where hearsay statements from multiple parties were consistent with one another and with trial testimony). Indeed, as Perez-Alonso points out, if anything, Norato-Perez had an incentive to exaggerate Perez-Alonso's involvement in the conspiracy so as to receive leniency in his own criminal proceedings. Second, the facts in the record do not lend independent credibility to Norato-Perez's statements. Police found guns in Perez-Alonso's home when they arrived to arrest him, but they recovered no drugs. Further, despite extensive surveillance of Perez-Alonso, nothing in the record indicates he

4

conducted drug transactions out of his home.  Instead, the presentence investigation report only records instances of Perez-Alonso delivering drugs to his customers.  Moreover, at the sentencing hearing, the probation officer informed the court that she did not apply the firearm increase because "there were no drugs [at the residence] and we didn't have any material showing that any drug transactions took place in the defendant's residence."  The only evidence in the entire record tending to show a connection between the guns and Perez-Alonso's drug activity was Norato-Perez's unsubstantiated hearsay recounted by the Government's DEA witness.  These facts do not show sufficient indicia of reliability under our case law.  *See Lee*, 68 F.3d at 1275–76.

### 2. Credibility findings

Second, the court failed to make any explicit findings of fact as to credibility.  *Ghertler*, 605 F.3d at 1269.  It made no effort to "reveal the reasons that led it to conclude that [Norato-Perez's] statements were reliable."  *Lee*, 68 F.3d at 1277.  While it is true we do not necessarily reverse due to the absence of a credibility finding "where the reliability of the statements is apparent from the record," *see United States v. Docampo*, 573 F.3d 1091, 1098 (11th Cir. 2009) (quoting *Gordon*, 231 F.3d at 761), that is not the case here.  The statements were not inconsistent with the rest of the record, but it can hardly be said that the record corroborated them; to the contrary, the record only contained evidence of Perez-

Alonso delivering drugs to Norato-Perez at locations other than Perez-Alonso's residence.  It did not contain anything to the effect that (1) Perez-Alonso sold drugs out of his house, where the guns were, (2) Perez-Alonso sold or gave a gun to Norato-Perez, or (3) Perez-Alonso's son was a part of the conspiracy or delivered drugs to Norato-Perez when Perez-Alonso was unavailable.  The only evidence for these claims came from Norato-Perez's hearsay statements.

### 3. Opportunity to rebut the evidence

Finally, Perez-Alonso was given no opportunity to rebut Norato-Perez's assertions.  Defense counsel indicated it wanted an opportunity to cross-examine Norato-Perez.  But since the Government never called Norato-Perez to testify, Perez-Alonso was denied "an opportunity to rebut the evidence." *Ghertler* 605 F.3d at 1269.

Contrary to the Government's suggestions, Perez-Alonso does not have the burden to show "improbability" until the government has met its burden to demonstrate that "the firearm was present at the site of the charged conduct or prove that the defendant possessed a firearm during conduct associated with the offense of conviction." *See Stallings*, 463 F.3d at 1220–21 (11th Cir. 2006) ("The government must show some nexus beyond mere possession between the firearms and the drug crime.").  Only after such a nexus is shown does the defendant have the burden to show improbability.

6

The district court clearly erred in relying on Norato-Perez's hearsay testimony alone to apply the firearm enhancement.  Accordingly, we remand Perez-Alonso's sentencing to the district court to make further findings as to the reliability of Norato-Perez's hearsay statements.  *See Lee*, 68 F.3d at 1276.

## B. Safety-Valve Relief

Next, Perez-Alonso argues that the court erred by determining that safety valve relief was necessarily precluded by the application of the firearm enhancement, and he should have been granted safety valve relief.

The "safety valve" of 18 U.S.C. § 3553(f) is available to a defendant who would ordinarily be subject to mandatory minimum sentence requirements but who demonstrates by a preponderance of the evidence that he meets the five mitigating criteria set forth in the statute.  *Carillo-Ayala*, 713 F.3d at 88, 90; *see also* U.S.S.G. § 5C1.2(a)(1)–(5).  Section 3553(f)(2) requires that the defendant show that he "did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense."  18 U.S.C. § 3553(f)(2); *Carillo-Ayala*, 713 F.3d at 88; *see also* U.S.S.G. § 5C1.2(a)(2).

The district court erred in concluding that a defendant subject to a firearm enhancement is necessarily precluded from receiving safety-valve relief.  This is an incorrect statement of the law in our Circuit.  *See Carillo-Ayala*, 713 F.3d at 91

7

("We hold that not all defendants who receive the enhancement under § 2D1.1(b)(1) are precluded from relief under subsection (a)(2) of the safety valve.").  As discussed above, based on the evidence introduced at the sentencing hearing, the district court erred in applying the firearm enhancement to Perez-Alonso in the first place.  Because it mistakenly applied the firearm enhancement and misapprehended applicable law, the court did not undertake the safety-valve analysis. Perez-Alonso was thus denied the opportunity to show he did not possess the weapons in connection with his drug offenses.  *See id.* at 90.

## II. CONCLUSION

The district court's errors were not harmless because Perez-Alonso's sentence was based on his firearm enhancement and safety-valve relief was improperly precluded.  *See Williams v. United States*, 503 U.S. 193, 203 (1992).  Accordingly, we **VACATE** Perez-Alonso's sentence and **REMAND** for further proceedings not inconsistent with this opinion.